J-S06008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGORY A. NORNHOLD | : | No. 1134 MDA 2022 |

Appeal from the Order Entered July 18, 2022
In the Court of Common Pleas of Cumberland County
Criminal Division at No: CP-21-CR-0003108-2021

BEFORE: STABILE, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                **FILED JULY 27, 2023**

The Commonwealth appeals from the order entered on July 18, 2022 in the Court of Common Pleas of Cumberland County that granted in part and denied in part the *habeas corpus* petition filed by Appellee, Gregory Nornhold ("Nornhold"). The Commonwealth argues that the trial court erred in granting Nornhold's request to dismiss charges of third-degree murder and aggravated assault, as well as charges of homicide by motor vehicle and aggravated assault by vehicle.[1] The Commonwealth also contends that the trial court erred in finding evidence of Nornhold's failure to use car seats inadmissible

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c) and 2702(a)(1); 75 Pa.C.S.A. §§ 3732(a) and 3732.1(a).

despite Nornhold's special training as a foster parent in the use of car seats.

Upon review, we affirm.

The trial court summarized the facts of this case as follows:

On August 3, 2021, at approximately 3:40 PM, [Nornhold] and his four minor passengers were travelling northbound on Interstate 81 around mile marker 54, within the bounds of Cumberland County. [Nornhold] was driving a Volkswagen Tiguan which departed the northbound left lane of Interstate 81, crossed the 75-foot grass median, and hit a Ford F-150 pickup trick which was travelling southbound, which then impacted a Ford Focus. During their investigation, the Pennsylvania State Police uncovered evidence that [Nornhold] made no effort to brake, accelerate or otherwise steer the vehicle after it left its lane of travel, crossed the median and entered the opposing lanes of travel. Additionally, several THC cartridges and vape pens were discovered inside [Nornhold's] vehicle following the collision.

Two of [Nornhold's] minor passengers, two-year-old L.N. and four-year-old M.G., were ejected from the vehicle and ultimately succumbed to their injuries. Six-year-old B.A. and eight-year-old G.A. were also injured, though they survived their injuries. Only L.N. and B.A. were in car seats, although L.N. was only in the seat portion of a booster seat. The driver of the F-150 suffered a broken rib and contusions to his lung, and the driver of the Ford Focus suffered multiple lacerations, as well as neck and back pain. [Nornhold] was also injured in the crash. Following the crash, [Nornhold] was transported to Penn State Holy Spirit Medical Center for treatment.

Sometime after his arrival at the hospital, [Nornhold's] blood was drawn. The results of that blood draw demonstrated that [Nornhold] had both active and inactive metabolites of marijuana in his system, as well as prescription medications, notably Zoloft (Sertraline) and Wellbutrin (Hydroxybupropion). Several hours after [Nornhold] arrived at the hospital, Trooper Jacob Fackler of the Pennsylvania State Police arrived to speak to him about the accident. [Nornhold] gave vague and multiple statements at this time, indicating he may have been cut off by another vehicle, something may have happened in front of him, he may have been distracted by his phone, or he may have been distracted by the children. [Nornhold] also indicated that he possessed a medical

- 2 -

marijuana card, but that he only used marijuana at home when his husband is present, and when [Nornhold] would not be driving. [Nornhold] was later interviewed a couple of months after the incident, with his attorney present, during which he posited that either the air bags or an unknown medical condition had rendered him unconscious, causing him to lose control of his vehicle.

Ultimately, charges were filed against [Nornhold] on November 18, 2021, and the criminal information was filed on February 3, 2022. The instant Petition for *Habeas Corpus* was filed on February 11, 2022, and a hearing held on April 22, 2022. Initial briefs were timely filed by both parties . . . and a reply brief was filed by [Nornhold] on June 15, 2022, prompting this opinion and order of court.

Trial Court Opinion, 7/18/22, at 1-3.

In its July 18, 2022 order, the trial court granted Nornhold's petition "with respect to the dismissal of the charges of Criminal Homicide—Third Degree Murder, Aggravated Assault, Homicide by Vehicle (Non-DUI) and Aggravated Assault by Vehicle (Non-DUI)." Order, 7/18/22, at 1. The order also granted the petition to the limited extent that two charges of endangering the welfare of a child were properly charged as third-degree, rather than second-degree, felonies. In all other respects, the petition was denied, thus preserving numerous additional charges, including Homicide by Vehicle While DUI and Aggravated Assault by Vehicle While DUI along with various restraint system violations.[2]

---

[2] 75 Pa.C.S.A. §§ 3735(a)(1)(ii), 3735.1(a), and 4581.

The Commonwealth filed a timely notice of appeal from the court's July 18, 2022 order.[3] Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.[4]

The Commonwealth presents two issues for our consideration:

I.      Did the trial court err when it granted [Nornhold's] writ of *habeas corpus* when the Commonwealth presented sufficient evidence to establish probable cause to warrant the belief that [Nornhold] committed the crimes charged?

II.     Did the trial court err when it suppressed evidence regarding [Nornhold's] failure to properly secure the victims in child car seats, as required by law?

Commonwealth Brief at 5 (numbering corrected and some capitalization omitted).

In its first issue, the Commonwealth asserts trial court error for granting Nornhold's writ of *habeas corpus* with regard to four charges brought against Nornhold, *i.e.*, criminal homicide—third-degree murder, aggravated assault, homicide by vehicle (Non-DUI), and aggravated assault by vehicle (Non-DUI). "We review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a

---

[3] With its notice of appeal, the Commonwealth filed an affidavit certifying that the July 18, 2022 order handicapped its prosecution, thus permitting an appeal pursuant to Pa.R.A.P. 311(d). **See** Notice of Appeal, 8/12/22, at 1 n.1 (unnumbered).

[4] We remind counsel for the Commonwealth that a copy of an appellant's Rule 1925(b) statement of errors complained of on appeal is to be attached to an appellant's brief. Pa.R.A.P. 2111(a)(11) and (d).

light most favorable to the Commonwealth." **Commonwealth v. Dantzler**, 135 A.3d 1109, 1111 (Pa. Super. 2016) (*en banc*) (citation omitted). Whether the Commonwealth has carried its pre-trial *prima facie* burden is a question of law. **Id.** at 1112 (citations omitted). "Indeed, the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime." **Commonwealth v. Karetny**, 880 A.2d 505, 513 (Pa. 2005).

As our Supreme Court explained in **Karetny**:

At the preliminary hearing stage of a criminal prosecution, the Commonwealth need not prove the defendant's guilt beyond a reasonable doubt, but rather, must merely put forth sufficient evidence to establish a *prima facie* case of guilt. A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense. Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury.

**Id.** at 513-14 (internal citations omitted).

We first consider whether the trial court committed error of law in dismissing charges of criminal homicide (third-degree murder) and aggravated assault. Pursuant to 18 Pa.C.S.A. § 2501, "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." In accordance with 18 Pa.C.S.A. § 2502(c), third-degree murder is any murder that is not murder in the first

or second degree, *i.e.*, not an intentional murder or one committed in the commission of a felony. "Murder in the third degree is an unlawful killing with malice but without the specific intent to kill." **Commonwealth v. Dunphy**, 20 A.3d 1215, 1219 (Pa. Super. 2011) (citations omitted).

In **Dunphy**, this Court reiterated that malice is defined as:

A "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.

**Id.** (quoting **Commonwealth v. DiStefano**, 782 A.2d 574, 582 (Pa. Super. 2001) (brackets and additional citation omitted)). "Malice may be inferred by considering the totality of the circumstances." **Id.** (citation omitted).

With respect to aggravated assault, "a person is guilty of aggravated assault if he . . . attempts to cause serious injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. 2702(a)(1). As our Supreme Court has stated, "the *mens rea* required for a conviction of aggravated assault, like third-degree murder, is malice; only the result of the crimes differ." **Commonwealth v. Packer**, 168 A.3d 161, 168 (Pa. 2017).

In its opinion, the trial court recognized:

"There is no distinction between the malice essential to third degree murder and that necessary for aggravated assault." [**Packer**, 168 A.3d at 168, citing] **Commonwealth v. Kling**, 731 A.2d 145, 147 (Pa. Super. 1999). "A defendant must display a conscious disregard for almost certain death or injury such that it

- 6 -

is tantamount to an actual desire to injure or kill; at the very least the conduct must be such that one could reasonable anticipate death or serious bodily injury would likely and logically result." *Kling, supra*, 731 A.2d at 148. "In view of this heightened *mens rea*, motor vehicle crashes seldom give rise to proof of the malice needed to sustain a conviction for third degree murder or aggravated assault." *Id. See also Packer, supra*, 168 A.3d at 170 ("In the DUI context, this Court has held that the decision to drive while under the influence of alcohol and/or a controlled substance does not, standing alone, constitute malice.").

Trial Court Opinion, 7/18/22, at 7.

The trial court conducted a comprehensive review of the dueling lines of cases relied on by the Commonwealth and by Nornhold. *See id.* at 8-14.[5]

_____

[5] Cases cited by the Commonwealth include *Packer, supra* (defendant demonstrated requisite malice for third-degree murder and aggravated assault by driving under the influence of Difluoroethane, which she huffed before and while driving, despite knowing of her history of losing consciousness after huffing); *Dunphy, supra* (defendant acted with malice and a complete disregard of unjustified risk of causing death or serious injury by driving while intoxicated, speeding at more than twice the speed limit, speeding up to make a traffic light, striking and killing a pedestrian crossing the street, and fleeing the scene); *Commonwealth v. Taylor*, 337 A.2d 545 (Pa. 1975) (intoxicated defendant who struck two children riding their bicycles home from a public swimming pool, killing one of them, despite specific knowledge that children frequently traveled in that area to and from the pool, and failed to stop after the collision, demonstrated malice). Conversely, Nornhold cites case in which there was no finding of malice, *e.g.*, *Commonwealth v. McHale*, 858 A.2d 1209 (Pa. Super. 2004) (unlicensed, uninsured, intoxicated driver who struck and injured two pedestrians before fleeing the scene did not exhibit malice sufficient to support aggravated assault conviction; *Commonwealth v. Comer*, 716 A.2d 593 (Pa. 1998) (superseded by statute on other grounds) (driver who operated vehicle at high rate of speed after drinking and ingesting muscle relaxers, jumped a curb and struck two people waiting for a bus, killing one of them, did not demonstrate *mens rea* sufficient to support conviction for third-degree murder and aggravated assault); *Commonwealth v. O'Hanlon*, 653 A.2d 616 (Pa. 1995) (running a red light, striking another vehicle and injuring its driver, insufficient to sustain aggravated assault conviction for intoxicated driver).

The court quoted **Commonwealth v. O'Hanlon**, 653 A.2d 616 (Pa. 1995), in which our Supreme Court held that

> mere recklessness is insufficient to support a conviction for aggravated assault, which requires a higher degree of culpability, *i.e.*, that which considers and then disregards the threat necessarily posed to human life by the offending conduct. There must be an element of deliberation or conscious disregard of danger not present to the same extent in, *e.g.*, either reckless endangerment . . . or driving while intoxicated.

**Id.** at 9 (quoting **O'Hanlon**, 653 A.2d at 618). Further:

> for the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that life threatening injury will ensue. The recklessness must, therefore, be such that life threatening injury is essentially certain to occur. This state of mind is, accordingly, equivalent to that which seeks to cause injury.

**Id.** (quoting **Commonwealth v. Comer**, 716 A.2d 593, 596 (Pa. 1998), in turn citing **O'Hanlon**, 653 A.2d at 618).

After analyzing the competing cases and considering the parties' arguments, the court concluded:

> [T]he facts of this case align more closely with **Comer** and its progeny than **Taylor** and **Packer**. Here, there was no testimony or evidence presented that [Nornhold] was fleeing from the scene of a crime . . . or that [Nornhold] knew he had a history of passing out after using marijuana and still drove despite that knowledge (**compare Packer, supra**). Nor was there any testimony or evidence that [Nornhold] was speeding or driving dangerously before the collision, that he observed a dangerous condition or hazard ahead, or that he made a deliberate choice to disregard that condition (**compare Dunphy, supra**[]). Instead, like **Comer** and its subsequent line of cases, [Nornhold] was driving with an intoxicant in his system which, even weighing that evidence in favor of the Commonwealth, is not enough on its own to demonstrate the existence of malice. . . . Further, there was

no evidence that [Nornhold's] conduct rose to the level of "almost assur[ing] that life threatening injury will ensue," as the **Comer** court stated would be required to meet the degree of recklessness contemplated in the aggravated assault statute. **Comer, supra**, [716 A.2d at 596]. In short, there was no evidence or testimony presented that [Nornhold's] state of mind at the time of the collision was "equivalent to that which seeks to cause injury." **Comer, supra**, [716 A.2d at 596] (citing to **O'Hanlon, supra**, 653 A.2d at 618). Further, . . . this court cannot consider the improper use, or lack of use, of child safety restraints as evidence supporting these charges. Ultimately, [Nornhold's] conduct failed to rise to the level of legal malice, and as such the Commonwealth failed to demonstrate the existence of a *prima facie* case of either third-degree murder of aggravated assault.

*Id.* at 14-15.

Cognizant that we are to examine the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth, we conclude, as did the trial court, that the Commonwealth has failed to carry its pre-trial, *prima facie* burden to make out the elements of criminal homicide—third degree murder, or aggravated assault. As Nornhold admits, "While the outcome of this case is tragic, it is clear that the required malice is missing." Nornhold's Brief at 18. We agree. Therefore, we will not disturb the trial court's ruling in regard to those charges.

We next consider whether the trial court erred in finding the Commonwealth failed to carry its pre-trial, *prima facie* burden to make out the elements of homicide by motor vehicle (non-DUI) and aggravated assault by vehicle (non-DUI). Pursuant to 75 Pa.C.S.A. § 3732(a):

Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the

operation or use of a vehicle or to the regulation of traffic **except section 3802 (relating to driving under influence of alcohol or controlled substance)** is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

*Id.* (emphasis added). Further, pursuant to 75 Pa.C.S.A. § 3732.1(a):

Any person who recklessly or with gross negligence causes serious bodily injury to another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, **except section 3802 (relating to driving under influence of alcohol or controlled substance)**, is guilty of aggravated assault by vehicle, a felony of the third degree when the violation is the cause of the injury.

*Id.* (emphasis added).

Here, the Commonwealth relies chiefly on this Court's decision in **Commonwealth v. Grays**, 167 A.3d 793 (Pa. Super. 2017), in which an intoxicated driver, travelling at a right rate of speed and passing vehicles in a no-passing zone, ultimately collided with a vehicle travelling in the opposite direction, causing a fatal collision. However, with respect to Grays' conviction for aggravated assault by vehicle (non-DUI), Grays challenged only whether one of his victims suffered a "serious bodily injury," a necessary element of the crime. With regard to the interplay between homicide by vehicle and aggravated assault (DUI) and their non-DUI counterparts, the issues were sentencing issues, *i.e.*, whether the non-DUI convictions merged with the DUI convictions. This Court noted that all elements of the crimes are not the same

and, therefore, the crimes did not merge for sentencing.[6] Therefore, **Grays** is not helpful in analyzing, let alone resolving, the issue before us.

Nornhold notes that the THC in his system cannot be considered for the non-DUI homicide and aggravated assault charges. "As a result, the Court has no evidence of [] any improper conduct on the part of Mr. Nornhold." Nornhold's Brief at 18. As Nornhold observes, because the charges in question are non-DUI offenses, "any evidence relating to the DUI is specifically excluded from consideration." **Id.** at 20. Further, "[s]imply crossing the grassy median separating lanes of travel on an interstate and impacting another vehicle is not sufficient to establish the recklessness necessary for the [non-DUI crimes]." **Id.** at 20-21 (citing **Commonwealth v. Wyatt**, 203 A.3d 1115 (Pa. Super. 2019)).

As the trial court recognized,

> In **Wyatt**, the trial court granted *habeas* relief based on the Commonwealth presenting evidence that the defendant was not speeding prior to the collision, that no mechanical failure was at fault for the collision, and that there was no erratic driving prior to the collision. Because the other factors were ruled out, the Commonwealth inferred that the defendant had to be distracted by something in the cab of his truck, which caused him to leave his lane, cross the center median and cause the fatal collision.

---

[6] The Court noted that "the crimes require proof of different elements. Homicide by Vehicle requires the cause of death to be the result of a violation of a motor vehicle law or ordinance other than a DUI violation; for example,[ as the appellant pled guilty to in **Commonwealth v. Neupert**, 684 A.2d 627 (Pa. Super. 1996),] racing on highway and failure to yield. On the other hand, Homicide by Vehicle–DUI explicitly requires a DUI conviction as an element of the crime." **Grays**, 167 A.3d at 814-15 (quoting **Neupert**, 684 A.2d at 629).

> The Superior Court, in affirming the grant of *habeas* relief, held that the Commonwealth failed to meet its burden, and that simply speculating that the defendant must have been distracted because no other explanation appeared to fit was insufficient to prove the *mens rea* for homicide by vehicle or aggravated assault by vehicle.

Trial Court Opinion, 7/18/22, at 17.

The trial court continued by distinguishing **Grays**, noting that the facts in that case demonstrated "that the defendant did more than just drift into opposing traffic, but instead was actively engaged in illegally passing other vehicles in a no-passing zone, which is a clear display of erratic driving before the collision." **Id.** at 18. By contrast, because evidence of driving under the influence cannot be considered for the non-DUI charges, "the Commonwealth is only able to present evidence that [Nornhold] departed his lane of travel, drifted across the center median and caused the fatal collision. There was no evidence presented that [Nornhold] was distracted, or displayed other erratic driving before the fatal collision." **Id.** (footnote omitted). Due to the lack of evidence or testimony that Nornhold "recklessly or with gross negligence" caused death or serious bodily injury, the trial court concluded that the Commonwealth failed to present a *prima facie* case supporting the charges of homicide by vehicle (non-DUI) and aggravated assault by vehicle (non-DUI). **Id.** We find no error in the trial court's conclusion. The Commonwealth's first issue fails.

In its second issue, the Commonwealth contends the trial court erred by suppressing evidence regarding Nornhold's failure to secure the victims in car

seats. "We evaluate the trial court's determinations regarding the admissibility of evidence by an abuse of discretion standard." **Commonwealth v. Einhorn**, 911 A.2d 960 972 (Pa. Super. 2006) (citation omitted). "We will not disturb the trial court's ruling unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." **Id.** (citation and internal quotations omitted).

As the Commonwealth correctly observes, "It is undisputed in this case that [Nornhold] failed to follow the law and did not have the children in the appropriate car seats" as required by 75 Pa.C.S.A. § 4581(a)(1)(i), (ii). Commonwealth Brief at 25. The Commonwealth quotes the second sentence of Section 4581(f), indicating that "[n]o criminal proceeding for the crime of homicide by vehicle shall be brought on the basis of noncompliance with this subchapter." **Id.** at 26. However, the Commonwealth ignores the first sentence of Section 4581(f), which provides that "[t]he requirements of this subchapter or evidence of a violation of this subchapter are not admissible as evidence in a criminal proceeding **except in a proceeding for a violation of this subchapter.**" 75 Pa.C.S.A. § 4581(f) (emphasis added). Therefore, the prohibition against evidence of a violation of the subchapter applies not only to homicide charges, but also to the remaining charges, with the exception of those relating to restraint systems. As the trial court recognizes, "It is axiomatic, an initial, undisputable rule of statutory construction, that

'[w]ords and phrases shall be construed according to rules of grammar and according to their common approved usage[.]'" Trial Court Opinion, 7/18/22, at 5 (quoting 1 Pa.C.S.A. § 1903(a)). "Under any reading of § 4581(f), it cannot be argued that the fact that the children were not in proper safety seats would be admissible in the underlying criminal matter, as the language of the law specifically prohibits the same." ***Id.***

The Commonwealth is not entitled to relief on its evidentiary claim.

Because neither of the Commonwealth's issues merits relief, we affirm the trial court's July 18, 2022 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/27/2023