J-A23016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JEFFERY R. RANKER :
:
Appellant : No. 1162 WDA 2024

Appeal from the PCRA Order Entered August 30, 2024
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000761-2019

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: April 20, 2026**

Jeffery R. Ranker ("Appellant") appeals from the order denying relief under the Post-Conviction Relief Act ("PCRA")[1]. We conclude that Appellant failed to meet his burden of pleading and proving that his counsel lacked a reasonable strategic basis for declining to object to the guilty plea colloquy, or that he was prejudiced by this failure. We therefore affirm.

**I.**

On October 10, 2018, Appellant was driving a vehicle that struck and killed a motorcyclist waiting at a red light. The Commonwealth filed a criminal information on May 14, 2019, charging Appellant with a dozen crimes, including third-degree murder, homicide by vehicle while driving under the influence ("DUI"), and homicide by vehicle. Of note, the criminal information

_____

[1] 42 Pa.C.S. §§ 9541-9546.

alleged the following substances were present in Appellant's blood: "Amphetamine, Buprenorphine-Free, and Norbuprenorphine-Free." **See** Criminal Information, 5/14/19. On June 17, 2019, Marco Sylvania, Esq., and Christopher Nakles, Esq., entered their appearances on Appellant's behalf. Appellant filed a pre-trial omnibus motion, which was scheduled for a hearing on December 17, 2019, and the parties otherwise prepared for trial. On December 2, 2019, the trial court entered an order scheduling "a hearing to consider [Appellant's] entry of a plea of guilty" to take place on December 10, 2019. Order, 12/2/19. On that date, Appellant and the assistant district attorney signed a written document setting forth the terms of the plea bargain. Appellant agreed to plead guilty to eleven of the twelve charges, with the Commonwealth withdrawing a summary traffic offense. The parties agreed to an aggregate sentence of 11 to 22 years of incarceration.

The primary issue in this case concerns the adequacy of the trial court's oral colloquy with respect to the facts supporting Appellant's plea to one of those eleven charges, third-degree murder. The trial court set forth the essential allegation as follows: "On the 10th of October, 2018, it's alleged that … you were under the influence of alcohol or drugs … at that time and that you struck the motorcycle … which [the victim] was operating." N.T. Guilty Plea, 12/10/19, at 7. Appellant agreed with this basic summary, and the trial court then asked what was in his system that day.

THE COURT: What was it that you had taken alcohol, drugs?

- 2 -

[APPELLANT]: It has minimal side[] effects, the Suboxone was laying on the kitchen counter and I didn't want the dog getting it. And other than that --

THE COURT: You had taken Suboxone that morning?

[APPELLANT]: Yes.

THE COURT: There is lab report that indicates amphetamine, epinephrine and norepinephrine and I am not sure what those are --

[APPELLANT]: It's in Adderall.

THE COURT: Suboxone?

[APPELLANT]: It's in Adderall.  I took it after the accident happened. Working six, six, seven days and put my mom in a home, already there, and was working to keep her there.

*Id.* at 7-8.

Neither attorney clarified whether Appellant's comments were correct. However, the Commonwealth added, "there is, also, a report of cocaine in his system.  Fentanyl and cannabis and epinephrine and benzodiazepine and barbiturates and amphetamines." *Id.*  Attorney Sylvania interjected: "Your Honor, just for the record, we're not in possession of the report that shows that there was cocaine in my client's system." *Id.*  The court noted that cocaine was "not in the information under the DUI." *Id.* at 8-9.  The Commonwealth stated that the reports were "in the discovery." *Id.* at 9.  The Commonwealth then offered the following summary to support Appellant's plea to the eleven counts.

> Judge, at the time of the incident [the victim] was stopped at the red light on his scooter and it was approximately 6:00 o'clock in the morning and [Appellant] came up behind him and at sixty-three

- 3 -

miles per hour and hit him … and pushed him down the road approximately one hundred ninety-two feet. Additionally, there are two witnesses that had testified at the preliminary hearing and those two witnesses indicated that they saw or were present when it happened and that [Appellant] said to one of them, he didn't even know what happened. ["]What happened? I don't know what is going on.["] So he was extremely under the influence of drugs and alcohol.

*Id*.

Following a brief exchange, the trial court asked, "[t]he malice … for the third degree is coming from the ingestion of Suboxone and driving the vehicle and driving it at a speed greater than the speed limit?" *Id.* at 10. The Commonwealth agreed, and added, "[i]f we would go to trial, what I would do is amend the information to include that report," presumably referencing the report reflecting the presence of additional drugs in Appellant's blood. *Id.* at 10-11. The Commonwealth also indicated that Appellant's "blood alcohol content was … point two zero nine, I believe." *Id.* at 11. Attorney Sylvania noted in response that the criminal information only charged a DUI based on "drugs … not alcohol." *Id.*

The trial court accepted the plea and imposed the agreed-upon sentence. Appellant did not file post-sentence motions or a notice of appeal.

**II.**

On January 28, 2020, Appellant filed a timely *pro se* PCRA motion, arguing that his plea counsel was ineffective. Notably, Appellant did not assert that his attorneys ineffectively recommended that he accept the plea. Instead, he presented a narrower claim: "[Plea] counsel provided ineffective

assistance by allowing [Appellant] to plead guilty to murder of the third degree when the facts did not support the charge." Amended PCRA Petition, 12/28/22, at unnumbered 5. Specifically, Appellant argued that "[c]ourts have continuously found that a sufficient factual basis must be met before a guilty plea can be accepted." *Id.* at unnumbered 6. Citing **Commonwealth v. Flanagan**, 854 A.2d 489, 500 (Pa. 2004), and **Commonwealth v. D'Collanfield**, 805 A.2d 1244 (Pa. Super. 2002), Appellant interpreted these cases to hold that "the failure of a factual basis equates to an unknowing entry of the plea resulting in a manifest injustice requiring a withdrawal of the plea." *Id.* Appellant discussed caselaw explaining that the *mens rea* for third-degree murder in vehicular DUI deaths requires proof of more than the fact the driver was intoxicated, and argued that the factual summary at his guilty plea colloquy failed to establish malice.

The PCRA court held an evidentiary hearing on June 25, 2024. Appellant resisted attempts to expand the inquiry to all facts that the Commonwealth might present at trial, instead arguing that the legal inquiry is confined to the facts adduced at the guilty plea colloquy, specifically the trial court's statement that Appellant's ingestion of Suboxone formed the basis for establishing the element of malice. The following exchange on direct examination of Attorney Sylvania is illustrative:

> Q. Right, at the time did you have a reasonable basis to plea [Appellant] out to [t]hird [d]egree [m]urder based upon the factual basis that was presented in this case?

A. So, at the time I thought so. But reflecting on it, if those were the facts on the record which I reviewed it and those are the facts on record – review of the evidence presented with the [S]uboxone that was the lone drug in his system and nothing else on the record, I don't know if that – and I don't think that that's enough … to prove malice.

Q. Do you agree that you had no reasonable basis to tell your client to plead guilty based upon the factual basis in this case?

A. I wouldn't say that I had no reasonable basis. There's a lot of discussions with [Appellant] and it was myself and also Chris Na[]kles who was another attorney on the case. We discussed in very [sic] detail with him over a long period of time, and this plea was essentially a conclusion of our discussions with [Appellant] and also with [the Commonwealth]. So, I believe that answers that question.

Q. You'd agree with me that based upon the whole [g]uilty [p]lea colloquy and summary of the facts that that's not sufficient to prove malice for [t]hird [d]egree [m]urder?

N.T. PCRA Hearing, 6/25/24, at 13-14.

On cross-examination, the Commonwealth asked Attorney Sylvania about the discovery he reviewed in connection with the plea negotiations. Appellant objected, arguing that the only facts relevant to his PCRA claim pertained to the facts established at the plea hearing.

[Appellant's Counsel]: I object to this, Your Honor. I don't think it's relevant to the factual basis issue that's being presented in this [c]ourt.

THE COURT: Here's the question I have because you're both tap dancing around this question . . . . is the PCRA limited to exactly what was stated on the record at the time of the plea or does his knowledge of the factual context of this accident come into play?

[Appellant's Counsel]: I believe, Your Honor[,] it's the factual basis. That's what was raised. And if you look at the –

THE COURT: Okay, here's why I'm asking that question . . . . if the DA or defense counsel intentionally or unintentionally

- 6 -

withholds things that they know of, how does that effect the plea on a PCRA proceeding?

[Appellant's Counsel]: It affects it because – it doesn't affect it because the fact is, Judge, you're bound by the record. **It is the factual basis that it is required at the time of the guilty plea**.

*Id.* at 18-19 (emphasis added).

Appellant also testified. The relevant testimony on direct examination was cursory: "Q. If the record does not support the factual basis for malice, would you have pled guilty to [t]hird [d]egree [m]urder? A. No sir." *Id.* at 31.

The PCRA court denied relief, and Appellant filed a timely notice of appeal and complied with the order to file a Pa.R.A.P. 1925(b) statement. The PCRA court filed its responsive opinion and Appellant now raises one issue for our review: "Whether trial counsel gave ineffective assistance by advising Appellant to plead guilty to third-degree murder when the factual basis did not support the element of malice[.]" Appellant's Brief at 5.

## III.

Appellant alleges ineffective assistance of counsel. The basic principles are well-settled.

Counsel is presumed effective. To succeed on a claim asserting the ineffective assistance of counsel, as is raised here, a petitioner must rebut that presumption by pleading and proving, by a preponderance of the evidence, three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction.

***Commonwealth v. Rizor***, 304 A.3d 1034, 1051 (Pa. 2023) (citations omitted). To establish prejudice, Appellant must show "a reasonable probability that the result of the proceeding would have been different." ***Commonwealth v. Lesko***, 15 A.3d 345, 417 (Pa. 2011).

Presently, Appellant defines the "proceeding" as the guilty plea colloquy hearing. Consistent with his amended PCRA petition and his evidentiary hearing arguments, Appellant's brief presents his argument with reference to the diminished record set forth at the plea, particularly the discussion regarding Suboxone as the sole basis for supporting the element of malice. Appellant argues that he has established arguable merit to his claim that the limited factual record at the colloquy would not support his third-degree murder conviction under relevant caselaw. ***See*** Appellant's Brief at 23-40. Accordingly, he submits that there was a basis to object to the colloquy. Next, to satisfy the second prong, Appellant cites Attorney Sylvania's testimony that he had no strategic basis not to object. ***Id.*** at 43 (citing N.T. PCRA Hearing, 6/25/24, at 12). Finally, as to prejudice, he argues there is "a reasonable probability that the outcome of Appellant's case would have been different had counsel not advised Appellant to plead guilty to third-degree murder," and he "would not have been convicted of third-degree murder as the facts do not establish the requisite *mens rea*." ***Id.*** at 45.

As context for our discussion, we briefly discuss the trial court's duties when deciding whether to accept a guilty plea. The trial court acts as a bulwark, protecting both defendants and societal interests.

> This Court, like the Supreme Court of the United States, has recognized that the best and surest way to assure both that the defendant's rights are protected and that the plea is validly taken is to make an adequate record at the plea hearing:
>
> What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought and forestalls the spin-off of collateral proceedings that seek to probe murky memories.

***Commonwealth v. Hines***, 437 A.2d 1180, 1187 (Pa. 1981) (cleaned up). Thus, "the law of this Commonwealth has long required that before a judge may properly accept a plea of guilty, a colloquy with the defendant must demonstrate that there is a factual basis for the plea and that the defendant understands the nature and elements of the offense charged." ***Id.*** at 1182.

Rule of Criminal Procedure 590 addresses the trial court's role in accepting a guilty plea, and the comment lists several topics that the judge should address, including whether there is a factual basis for the plea. ***See*** Pa.R.Crim.P. 590, cmt. As stated by our Supreme Court in ***Flanagan***, "[t]he salutary purposes of the requirement include protecting against the situation that Flanagan claims has occurred here, namely, a defendant's mistaken plea to an offense that is not actually implicated by his conduct." ***Id.*** at 500. This is Appellant's essential claim. ***See*** Appellant's Brief at 19 (arguing that "trial counsel advised Appellant to plead guilty to third-degree murder when the factual basis did not support the element of malice").

We accept that the limited factual basis presented at the guilty plea colloquy would not suffice to meet the elements of murder in the third degree. Accordingly, we accept that Appellant has established arguable merit[2] to his claim of ineffective assistance based on the failure to object to the colloquy. However, we conclude that Appellant has failed to meet his burden to plead and prove the remaining two prongs required to establish ineffective assistance of counsel.

<u>Reasonable strategic basis</u>

Appellant has framed his ineffective assistance of counsel claim solely with respect to the guilty plea colloquy and thus argues that the defective plea colloquy should have prompted an objection.

The flaw with this argument is that a successful objection to the colloquy may have resulted in the rejection of the proposed plea bargain[3] that counsel had decided was favorable and which Appellant had agreed to accept. "Where

_____

[2] Notwithstanding this concession, Appellant's complaint is that the guilty plea hearing failed to present adequate facts to support the element of malice, which is a mental state. Appellant was uniquely situated to confirm whether he acted with malice, "[a]s intent is a subjective frame of mind, it is of necessity difficult of direct proof." **Commonwealth v. Matthews**, 870 A.2d 924, 929 (Pa. Super. 2005). Thus, the fact Appellant agreed he acted with malice is arguably not the type of "fact" that must be covered by the colloquy. **See Commonwealth v. Watson**, 835 A.2d 786, 797 (Pa. Super. 2003) ("By pleading guilty, Watson acknowledged the facts and the necessary intent, regardless of the Commonwealth's ability to prove them and how it might do so.").

[3] Appellant's argument ignores the fact that the Commonwealth may have simply presented additional facts if counsel had objected.

counsel is able to negotiate a favorable plea bargain, and where the defendant understands the bargain and is satisfied with and accepts it rather than go to trial, the decision by counsel not to object to a defective guilty plea colloquy will be deemed a reasonable one." *Commonwealth v. Fluharty*, 632 A.2d 312, 318 (Pa. Super. 1993). The *Fluharty* Court's point is logical: an attorney definitionally has no strategic reason to object to a colloquy—and risk rejection of the plea bargain and force a trial—if the attorney concluded that the plea bargain is a favorable resolution for his client.[4]

Appellant's options were not simply to object to the colloquy or not. His actual choices were to accept the negotiated guilty plea or proceed to trial. Appellant makes a compelling case that the third-degree murder conviction would not withstand scrutiny on appeal if the facts presented to the jury were limited to what was said at the plea. However, plea counsel had to consider all potential evidence the Commonwealth could offer in deciding how to advise Appellant on whether to accept the proposed plea offer.[5]

---

[4] It is not clear that an attorney could object to a defective colloquy based on an allegation the facts are insufficient to justify a plea that the defendant wishes to take. "[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal[.]" *Jones v. Barnes*, 463 U.S. 745, 751 (1983). If we accepted Appellant's theory, an attorney may unilaterally override a defendant's desire to take a plea bargain if the prosecutor's factual summary is inadequate.

[5] For example, it is not clear how much alcohol was in Appellant's blood, nor is it clear whether Appellant had cocaine in his system. As previously quoted, the Commonwealth stated at the guilty plea that there was a "report of cocaine
*(Footnote Continued Next Page)*

- 11 -

By attempting to restrict our analysis to the facts presented at the guilty plea hearing, Appellant ignores that counsel's advice to accept the plea was obviously not based just on the summary of facts that the Commonwealth offered at the hearing. Nor was that advice limited to whether the Commonwealth could prove third-degree murder. The Commonwealth charged Appellant with, among other crimes, homicide by vehicle while DUI, which as graded carried a maximum penalty of ten years' incarceration, including a mandatory minimum sentence of three to six years for the death of the victim. 75 Pa.C.S. § 3735(a)(1)(i); (a)(2). The Commonwealth also charged Appellant with homicide by vehicle, which carries a maximum penalty of seven years of incarceration. 75 Pa.C.S. § 3732(a).[6] Appellant's focus on third-degree murder thus ignores the reality that he faced serious charges even if the Commonwealth could not secure a guilty verdict for third-degree murder. It is simply incorrect to presume that the third-degree murder charge was the only consideration that affected Appellant's decision to accept the

---

in [Appellant's] system." N.T. Guilty Plea, 12/10/23, at 17. Here, Appellant skirts that issue by noting that fact was simply alleged at his plea. "Despite the Commonwealth alleging cocaine, there was no evidence of [Appellant] having cocaine in his system." Amended PCRA Petition, 12/28/22, at unnumbered 14. Of course, the failure to offer that evidence at the guilty plea does not mean that the Commonwealth would not ultimately offer such evidence at trial.

[6] Because these two crimes do not merge, Appellant ran the risk the trial court would impose consecutive sentences. **See Commonwealth v. Neupert**, 684 A.2d 627, 629 (Pa. Super. 1996).

plea. Based on the factual summary presented at the plea colloquy, the Commonwealth had a strong case for those other charges.

We do not know to what extent counsel considered other factors in making his recommendations to Appellant such as the possible sentence Appellant might receive if the case proceeded to trial or whether additional facts not presented at the colloquy could be proven. We do not know because Appellant chose not to ask. Because "the decision by counsel not to object to a defective guilty plea colloquy will be deemed a reasonable one" where counsel "is able to negotiate a favorable plea bargain," Appellant has failed to satisfy his burden to show that counsel lacked a reasonable strategic basis for objecting to the colloquy. *Fluharty*, 632 A.2d at 318.[7]

<u>Prejudice</u>

Finally, we alternatively conclude that Appellant failed to establish prejudice, as the plea, notwithstanding any deficiency regarding its factual basis, was nonetheless knowingly and voluntarily made. Therefore, even accepting that our prejudice analysis is limited to the colloquy itself and not

---

[7] We acknowledge that plea counsel testified that he had no strategic basis for not objecting to the colloquy. We do not find this to be dispositive. First, that concession was in response to Appellant's theory that the inquiry was limited to the facts discussed at the guilty plea hearing. *See* N.T. PCRA Hearing, 6/25/24, at 13 (PCRA counsel repeatedly referencing "the factual basis that was presented in this case"). Second, counsel also testified that he "wouldn't say that [he] had no reasonable basis" not to object to the colloquy, as "[t]here's a lot of discussions" between himself, Appellant, and co-counsel. *Id.*

the broader decision to plead guilty and accept the negotiated sentence,[8] we would still affirm the order.

Appellant's prejudice argument appears to be that the colloquy's absence of an adequate factual basis warrants relief *per se*. Appellant cites **Flanagan** for the proposition that "the failure of a factual basis equates to an unknowing entry of the plea resulting in a manifest injustice requiring a withdrawal of the plea." Appellant's Brief at 21. **Flanagan** does not hold that a plea must be deemed unknowing or involuntary based strictly on a factual deficiency.

In **Flanagan**, Dennis Flanagan and George Yacob were charged with robbing, beating, and killing James Redman. **Flanagan**, 854 A.2d at 490. Flanagan gave a statement to police, "relat[ing] that he and Yacob planned a non-fatal assault on Mr. Redman on account of Mr. Redman's sexual orientation and his having made advances toward Yacob." **Id.** Flanagan's account largely blamed Yacob for the assault and murder.

---

[8] Typically, where the claim is that trial counsel ineffectively advised the client to accept a guilty plea, the prejudice prong requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." **Commonwealth v. Rathfon**, 899 A.2d 365, 370 (Pa. Super. 2006) (quoting **Hill v. Lockhart**, 474 U.S. 52, 59 (1985)).

Here, Appellant testified only that he would not have pled guilty to third-degree murder. N.T. PCRA Hearing, 6/25/24, at 31 ("Q. If the record does not support the factual basis for malice, would you have pled guilty to [t]hird [d]egree [m]urder? A. No sir."). Appellant did not testify that he would have rejected the plea agreement and proceeded to trial on all charges.

Flanagan ultimately entered a plea to murder generally, with the trial court to determine the degree of guilt.[9] "During the course of the colloquy, however, the plea court committed two errors[.]" *Id.* at 493. First, the court "failed to adduce the factual basis for the plea" and instead "merely alluded to its basic familiarity with the circumstances underlying the plea." *Id.* Second, the court "erroneously advised Flanagan that accomplice theory renders an accomplice liable for 'any crimes committed by any other accomplice regardless of whether a particular accomplice committed the particular crime about which we are talking.'" *Id.*

Flangan filed a petition under the predecessor to the PCRA. *Id.* Flanagan argued the court "erred in accepting his pleas, and his plea counsel was ineffective for failing to object to the plea colloquy, based on, *inter alia,* the absence of a factual predicate for the pleas and the errors and omissions in the plea court's descriptions of accomplice and co-conspirator liability[.]" *Id.* at 496. The court granted Flanagan's petition and we affirmed.

The Supreme Court granted allowance of appeal and upheld this Court's decision. The Court held that the colloquy was defective "by reason of both an absence of a contemporaneous record of the factual basis for the plea and the erroneous accomplice liability instruction." *Id.* at 500. However, the

_____

[9] *Flanagan* therefore is distinguishable, as the case does not involve a negotiated sentence. The trial court concluded that "counsel's contention that he believed that it was in Flanagan's best interests to plead guilty to avoid the death penalty [was] flawed, as Flanagan faced the same possibility of the receiving a death sentence after pleading guilty that he did prior to the entry of his plea." *Flanagan*, 854 A.2d at 497.

Court did not hold that these defects required reversal *per se*, as the precedent in this area requires "a more general assessment of the knowing, voluntary, and intelligent character of the plea, considered on the totality of the circumstances." *Id.* In sustaining relief, the Court stressed that the defects "caused Flanagan to affirm that his understanding of the controlling law was exactly to the contrary." *Id.* at 501. Addressing whether counsel had a reasonable strategic basis for not intervening, the Court explained:

> Indeed, it is difficult to hypothesize a more concrete example of a facially defective colloquy, and correspondingly legally unknowing plea, than a circumstance in which the plea court causes the defendant to affirm a materially erroneous understanding of the substantive law establishing criminal liability on the offenses charged. By supplying the wrong legal framework against which to assess the facts, the plea court exacerbated the effect of the substantial deficiency arising out of its failure to adduce the factual basis and rendered the plea unknowing on the face of the record presented.

*Id.* at 502 (citation omitted).

The Court did not explicitly address application of the prejudice prong but quoted this Court's analysis, which had found that "the record … indicates that Flanagan apparently felt that he was guilty as an accomplice, and always maintained that he never touched the victim, and only agree[d] to beat the victim, never to kill him." *Id.* at 498 (quoting opinion).

Unlike **Flanagan**, Appellant's colloquy does not contain any comparable legal misunderstanding which would justify invalidating the plea. The trial court did not apply "the wrong legal framework against which to assess the facts" in deciding whether to accept the plea. Instead, the trial court simply

- 16 -

accepted the shared view of the Commonwealth and Appellant that, if the Commonwealth proceeded to trial, the facts were sufficient to support a verdict of third-degree murder. Unlike **Flanagan**, the colloquy does not contain an explicit denial of any of the elements being charged or any misunderstanding of applicable law. **See Commonwealth v. Dinell**, 270 A.3d 530, 536 (Pa. Super. 2022) (concluding colloquy was facially defective where crime required proof that acts were done for purpose of gratifying sexual desire and Dinell "explicitly denied that his conduct had any sexual purpose"). Nor does the colloquy wholly lack any factual basis. **See Hines**, 437 A.2d at 1183 (concluding that the withdrawal of plea for murder was warranted where "no facts underlying the alleged offense [we]re adduced" and Hines "was not even asked the threshold question of whether he had killed the victim"). The deficiency in Appellant's colloquy is limited to a failure to offer additional facts to support the *mens rea* of malice. Therefore, the colloquy supplied a sufficient factual basis to support the plea and, containing no misstatement of law, Appellant failed to prove that the colloquy caused an unknowing or involuntary plea.

**IV.**

Because Appellant failed to develop a record regarding whether his attorneys' advice to accept the negotiated plea and its defined term of imprisonment was deficient, we conclude that Appellant failed to show that counsel lacked a reasonable strategic basis for not objecting to the colloquy. Additionally, we

- 17 -

conclude that Appellant failed to establish prejudice. Thus, Appellant has not established that his counsel was ineffective.

Order affirmed.

President Judge Emeritus Panella joins this memorandum.

Judge McLaughlin files a dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/20/2026